RECEIVED
NOV 1 9 2013
AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 2:13-cr-748-FSH |
| v. | : | Filed: |
| JOSEPH WOLFSON; GREGG GEHRING; JAMES JEFFERS JR.; ROBERT JEFFREY; BETTY SIMON, TRUSTEE LLC; and RICHARD SIMON, TRUSTEE, | : | Violation: 15 U.S.C. § 1 |
| Defendants. | : | |

---

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges that:

### SHERMAN ACT CONSPIRACY
### (15 U.S.C. § 1)

1. JOSEPH WOLFSON; GREGG GEHRING; JAMES JEFFERS JR.; ROBERT JEFFREY; BETTY SIMON, TRUSTEE LLC; and RICHARD SIMON, TRUSTEE, are herby indicted and made defendants on the charge stated below.

### RELEVANT PARTIES AND ENTITIES

2. Defendant BETTY SIMON, TRUSTEE LLC is a closely held limited liability corporation existing under the laws of the state of New Jersey, with its principal place of business in Northfield, New Jersey. At all times relevant to this Indictment, BETTY SIMON, TRUSTEE LLC purchased municipal tax liens sold at auctions in New Jersey.

3. Defendant RICHARD SIMON, TRUSTEE is a partnership existing under the laws of the state of New Jersey, with its principal place of business in Northfield, New Jersey. At all times relevant to this Indictment, RICHARD SIMON, TRUSTEE purchased municipal tax liens sold at auctions in New Jersey.

4. Defendant JOSEPH WOLFSON is a resident of Margate, New Jersey. At all times relevant to this Indictment, WOLFSON had an ownership interest in, and was a principal bidder for, both BETTY SIMON, TRUSTEE LLC and RICHARD SIMON, TRUSTEE. WOLFSON attended certain municipal tax lien auctions in New Jersey, where he bid on and purchased tax liens on behalf of both entities. WOLFSON joined and participated in the conspiracy charged herein beginning at least as early as 1998 and continuing until as late as February 2009.

5. At all times relevant to this Indictment, Company 1 was a corporation organized under the laws of the state of Delaware, with its principal place of business in New York, New York. Company 1 purchased municipal tax liens sold at auctions in New Jersey.

6. Defendant GREGG GEHRING is a resident of Newton, New Jersey. At all times relevant to this Indictment, GEHRING was a Vice President of Company 1. GEHRING had responsibility for overseeing the bidders who were authorized to bid on behalf of Company 1 at municipal tax lien auctions in New Jersey. GEHRING also attended certain municipal tax lien auctions in New Jersey, where he bid on and purchased tax liens on behalf of Company 1. GEHRING joined and participated in the conspiracy charged herein beginning at least as early as 2004 and continuing until as late as February 2009.

7. Crusader Servicing Corporation ("Crusader") was a corporation organized under the laws of the state of Pennsylvania, with its principal place of business in Jenkintown,

Pennsylvania. At certain times relevant to this Indictment, Crusader purchased municipal tax liens sold at auctions in New Jersey.

8. Company 2 was a corporation organized under the laws of the state of Pennsylvania, with its principal place of business in Jenkintown, Pennsylvania. Company 2 was the successor corporation to Crusader. At certain times relevant to this Indictment, Company 2 purchased municipal tax liens sold at auctions in New Jersey.

9. Defendant JAMES JEFFERS JR. is a resident of Burlington, New Jersey. At all times relevant to this Indictment, JEFFERS JR. was employed as an independent contractor by Crusader or its successor Company 2, and was responsible for managing and overseeing bidders who were authorized to bid on behalf of Crusader and Company 2 at municipal tax lien auctions in New Jersey. JEFFERS JR. also attended certain municipal tax lien auctions in New Jersey, where he bid on and purchased tax liens on behalf of Crusader and Company 2. JEFFERS JR. joined and participated in the conspiracy charged herein beginning at least as early as 1998 and continuing until as late as February 2009.

10. Defendant ROBERT JEFFREY is a resident of Bradenton, Florida. At all times relevant to this Indictment, JEFFREY was employed as an independent contractor by Crusader or its successor Company 2, and was responsible for managing and overseeing bidders who were authorized to bid on behalf of Crusader and Company 2 at municipal tax lien auctions in New Jersey. JEFFREY also attended certain municipal tax lien auctions in New Jersey, where he bid on and purchased tax liens on behalf of Crusader and Company 2. JEFFREY joined and participated in the conspiracy charged herein beginning at least as early as 1998 and continuing until as late as February 2009.

11. Various persons and corporations, including Company 1, Crusader, and Company 2, not made defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

12. Whenever in this Indictment reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

## BACKGROUND

13. A municipal tax lien, as used herein, is an encumbrance on real property imposed by a municipality under the laws of the state of New Jersey. When the owner (or owners) of real property fails to pay real property taxes, water taxes, sewer taxes, or other taxes, the municipality in which the property is located may attach a lien to the property. If, after a certain waiting period, a lien remains unpaid, the lien may be sold at a public auction. The value of a lien sold at an auction includes the amount of the unpaid taxes on the property, any accrued interest, and any applicable costs or penalties.

14. There are approximately 566 municipalities in New Jersey, all of which impose certain taxes on real property situated within the municipal borders. At least once each year, each municipality may conduct a public auction in order to sell outstanding tax liens the municipality has imposed.

15. Each municipal tax lien sold at an auction in New Jersey has a specific interest rate. The interest rate is set by a competitive, public auction, on a lien-by-lien basis.

16. The statutory maximum interest rate permitted on any tax lien sold in New Jersey is 18 percent. The interest rate may be as low as zero percent. Accordingly, at a municipal tax

lien auction the bidding opens at 18 percent, and the bidders may bid the interest rate down to zero percent.

17.     If the interest rate on a given lien reaches zero percent, the bidders may bid on a "premium" they would be willing to pay in order to purchase the tax lien. The "premium" is a whole-dollar amount, and is held in escrow by the municipality until the taxpayer's debt is satisfied and the certificate evidencing ownership of the tax lien is redeemed, at which time the municipality returns the premium to the lien holder.

18.     A lien holder has a number of rights with respect to the real property encumbered by a municipal tax lien. The lien holder is entitled to receive the interest payments in their entirety, plus the outstanding principal of the lien. "Subsequent taxes" are unpaid taxes that became due on the property after the imposition of the tax lien sold at auction. A lien holder has the right to pay "subsequent taxes" on the property, and to collect interest from the property owner on any "subsequent taxes" paid by the lien holder. By statute, the interest rate associated with subsequent taxes is automatically 18 percent. A lien holder also has the right, after a two-year period from the date of the purchase of the tax lien, to foreclose on the property owner's right of redemption of the tax lien and take title to the property if the taxes owed on the property, accrued interest, or any applicable costs or penalties remain unpaid.

19.     The owner of property encumbered by a tax lien is responsible for paying the entire balance of delinquent taxes owed, plus interest, if any, as determined by the auction, in addition to any subsequent taxes and interest.

20.     At all times relevant to this Indictment, New Jersey municipal tax lien investors had differing financial resources. Some investors were self-financed individuals bidding in their own name or on behalf of a closely held corporation, partnership or family trust. Other investors

pooled the capital of a number of investors, leveraged that capital through loans or lines of credit, and utilized multiple bidders to purchase liens at auctions throughout New Jersey.

21.    Company 1, Crusader and Company 2 each leveraged their investment capital and utilized multiple bidders to purchase liens at auctions throughout New Jersey. Crusader and Company 2 were among the most active investors, in terms of the number of auctions each entity attended and the capital each had available. Company 1 was also an active investor, in terms of the number of auctions attended and available capital, in this market. Defendants BETTY SIMON, TRUSTEE LLC, and RICHARD SIMON, TRUSTEE were also active investors, in terms of the number of auctions attended though within a more limited geographic region than Company 1, Crusader and Company 2, and in terms of available capital.

## DESCRIPTION OF THE OFFENSE

22.    Beginning at least as early as 1998 and continuing until as late as February 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey and elsewhere, the defendants JOSPEH WOLFSON; GREGG GEHRING; JAMES JEFFERS JR.; ROBERT JEFFREY; BETTY SIMON, TRUSTEE LLC; and RICHARD SIMON, TRUSTEE (collectively, "Defendants") and co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition for the purchase of municipal tax liens sold at certain auctions within the District of New Jersey, by allocating and submitting collusive and non-competitive bids for the purchase of said tax liens. The combination and conspiracy engaged in by the Defendants and co-conspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

23.    The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and co-conspirators, the substantial

6

terms of which were to allocate, and to rig bids for the purchase of, municipal tax liens sold at certain auctions within the District of New Jersey.

## MEANS AND METHODS OF THE CONSPIRACY

24. For the purpose of forming and carrying out the charged combination and conspiracy, the Defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

   (a) prior to the commencement of certain auctions for the sale of municipal tax liens, discussing and agreeing not to compete for the purchase of certain municipal tax liens;

   (b) allocating the purchase of certain municipal tax liens among the co-conspirators, including, from time to time, by flipping a coin, drawing numbers out of a hat, or drawing cards;

   (c) refraining from bidding on certain municipal tax liens pursuant to agreements reached among the co-conspirators so as to permit the designated winning bidder to purchase certain municipal tax liens at collusive and non-competitive interest rates; and

   (d) bidding on and purchasing municipal tax liens in accordance with those agreements at collusive and non-competitive interest rates.

25. Pursuant to his managerial role with Company 1, defendant GREGG GEHRING instructed and encouraged certain of Company 1's bidders under his supervision, directly or indirectly, to attempt to allocate and to allocate liens and rig bids with other co-conspirators, was aware certain bidders did so, and approved such conduct.

26.  Pursuant to his managerial role with Crusader and Company 2, defendant JAMES JEFFERS JR. instructed and encouraged certain of Crusader's and Company 2's bidders under his supervision, directly or indirectly, to attempt to allocate and to allocate liens and rig bids with other co-conspirators, was aware certain bidders did so, and approved such conduct.

27.  Pursuant to his managerial role with Crusader and Company 2, defendant ROBERT JEFFREY instructed and encouraged certain of Crusader's and Company 2's bidders under his supervision, directly or indirectly, to attempt to allocate and to allocate liens and rig bids with other co-conspirators, was aware certain bidders did so, and approved such conduct.

28.  Pursuant to his role as a bidder for defendants BETTY SIMON, TRUSTEE LLC and RICHARD SIMON, TRUSTEE, at certain auctions for the sale of municipal tax liens, defendant JOSEPH WOLFSON agreed to and did allocate liens and rig bids with other co-conspirators.

29.  Pursuant to his role as a bidder for Company 1, at certain auctions for the sale of municipal tax liens, defendant GREGG GEHRING agreed to and did allocate liens and rig bids with other co-conspirators.

30.  Pursuant to his role as a bidder for Crusader and Company 2, at certain auctions for the sale of municipal tax liens, defendant JAMES JEFFERS JR. agreed to and did allocate liens and rig bids with other co-conspirators.

31.  Pursuant to his role as a bidder for Crusader and Company 2, at certain auctions for the sale of municipal tax liens, defendant ROBERT JEFFREY agreed to and did allocate liens and rig bids with other co-conspirators.

## INTERSTATE TRADE AND COMMERCE

32. During the period covered by this Indictment, monetary funds from outside the state of New Jersey were used by one or more of the Defendants and co-conspirators to purchase tax liens at auctions subject to the conspiracy. In addition, certain Defendants and co-conspirators residing outside the state of New Jersey attended certain auctions within the state of New Jersey, and participated in allocating liens among and rigging bids with the Defendants and co-conspirators.

33. During the period covered by this Indictment, the business activities of the Defendants and their co-conspirators with respect to the sale of municipal tax liens that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## JURISDICTION AND VENUE

34. The combination and conspiracy charged in this Indictment was carried out, in part, within the District of New Jersey within the five years preceding the filing of this Indictment.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: November 19, 2013

A TRUE BILL

FOREPERSON

LESLIE C. OVERTON
Acting Assistant Attorney General

MARVIN PRICE
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

MARC SIEGEL
Acting Chief, New York Office

JOHN W. VAN LONKHUYZEN
CHARLES V. REILLY
BRYAN C. BUGHMAN
KRISTINA N. SRICA
Trial Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, N.Y. 10278
(212) 335-8000

CASE NUMBER: 2:13-cr-748-FSH

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

JOSEPH WOLFSON;
GREGG GEHRING;
JAMES JEFFERS JR.;
ROBERT JEFFREY;
BETTY SIMON, TRUSTEE LLC;
RICHARD SIMON, TRUSTEE

## INDICTMENT FOR

15 U.S.C. § 1

A True Bill,


_____
Foreperson

PAUL J. FISHMAN
UNITED STATES ATTORNEY
NEWARK, NEW JERSEY

CHARLES V. REILLY
ASSISTANT U.S. ATTORNEY
212-335-8039

USA-48AD 8
(Ed. 1/97)