# PETRILLO KLEIN & BOXER LLP

655 Third Avenue
22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
www.pkbllp.com

Nelson A. Boxer
Direct Dial: (212) 370-0338
Cell:           (917) 273-2693
nboxer@pkbllp.com

February 13, 2014

**By E-Mail – To Be Filed Under Seal**

Hon. Faith S. Hochberg
United States District Court
District of New Jersey
Martin Luther King, Jr. U.S. Courthouse
  and Federal Building
50 Walnut Street
Newark, NJ 07101

    Re:    **U.S. v. Wolfson, et al., No. 2:13-cr-00748 (FSH)**

Dear Judge Hochberg:

On behalf of Gregg Gehring, I respectfully submit this Application for an Order permitting counsel for Mr. Gehring to retain and use a document produced by the government which apparently contains a government paralegal's work product. I further request that, if filed, this Application be filed under seal until such time as the Court determines whether or not it should be publicly filed.

    A.    <u>Factual Background</u>

On November 19, 2013, a grand jury returned the Indictment in this case charging six defendants, including Mr. Gehring. The Indictment contains one Count and alleges a conspiracy to violate the Sherman Act by suppressing and eliminating competition in New Jersey municipal tax lien auctions.

To date the government has sent defense counsel a small quantity of documents and has made available for inspection numerous paper documents at its office in Manhattan. Specifically, on December 16, 2013, the government provided defense counsel with an 88-page spreadsheet (previously filed under seal with the Court at ECF No. 28-1) of discoverable material, itemizing various individual documents and collections of documents, and listing, among other things, the name of the box containing the documents, a short summary of the box's contents, the custodian, the bates numbers, and whether the documents are in electronic or paper format. The government

Hon. Faith S. Hochberg
February 13, 2014
Page 2

instructed it needed 48-hours' notice in order to make boxes with paper documents indicated on the spreadsheet available for inspection.

On January 16, 2014, we e-mailed the government that we wanted to inspect documents on January 21, 2014, and on January 21 those items were made available to us at the government's Manhattan office. During our examination that day, a government paralegal was required to be present during our review. In addition, we were given explicit permission to take photographs of any documents that were made available to us. After the inspection, the government was notified that we observed that one box contained a document that appeared to be government work product— July 2013 correspondence from the government to a litigation support vendor regarding electronic duplication of grand jury material. *See* Def. Gehring's Reply in Supp. Objection to Gov'ts. Mot. Speedy Trial Order, at 4, ECF No. 28.

On January 27, 2014, we provided the government with notice that we wanted to inspect documents on January 30, 2014, and on January 28, 2014, we informed the government that we wanted to inspect the paper files contained in items indicated on the spreadsheet as FBI01-FBI87. On January 29, 2014, the government denied our request to inspect those materials on the grounds they were internal government documents made by government agents in connection with investigating or prosecuting the case.

On February 7, 2014, we again provided the government with 48-hours' notice that we sought to inspect thirty listed items of government discovery on February 10, 2014; our list included documents designated as box BERGEN01 on the government's spreadsheet. On February 10, two of my colleagues—Robin Dull and Philip Pilmar—reviewed all of the requested items that had been produced to a conference room at the government's office for our review, and took photographs of many documents. As on January 21, a government paralegal was present in the conference room with the documents. During the inspection, Mr. Pilmar and Mr. Dull reviewed a document that appeared to describe, among other things, administrative procedures for handling certain types of documents (the "Disclosed Document"). It also contained a subheading that used the word "Cooperators" in a phrase, beneath which was a bullet point list of names of approximately five individuals; another page contained a reference to the government's review of *Brady* material. The document contained no designation that it was attorney work product or otherwise contains privileged information. Nor did the document have a cover page, or anywhere state the name of the author, the audience, or the date on which it was written. Mr. Dull took a photograph of the Disclosed Document.

Upon their return to our office on February 10, Mr. Dull and Mr. Pilmar described the results of their document review, including their review of the Disclosed Document. (I have not reviewed the Disclosed Document.) At approximately 9 a.m. on February 11, 2014, after a preliminary review of the authorities and informal consultation with a law professor, we concluded that it was, at least, arguable that the document had been inadvertently disclosed, and provided the government with notice that the document had been disclosed.[1] In response, the government stated

---

[1] Immediately following our notice to the government, we sequestered the document and have not reviewed it further.

Hon. Faith S. Hochberg
February 13, 2014
Page 3

that the document was an "internal working document" protected by the attorney work product privilege, and requested that we return any copies of the document and destroy any notes we may have taken. In response to our further inquiry that day, the government asserted that the document was created by Kevin James, a paralegal, and had been shared with Caitlin Morrison, a paralegal supervisor. The government also said that attorney Kristina Srica had reviewed an earlier version of the document and that the document "contains Mr. James' notes of directions he has received from attorneys in this office and from others on the proper procedures to deal with functions with which he is charged to perform," and reiterated its request that the document be returned. *Id.* We responded on the same day that we would consider the government's request, noted our ethical obligations to Mr. Gehring to zealously advance his interests within the bounds of law and ethics, and informed the government that we expected to respond by today, February 13, 2014. *See* Exhibit A.

B. <u>Legal Standard</u>

"[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). This protection extends to documents created by an attorney's agent. *See id.* Opinion or "core" work product contains the mental impressions and legal theories of an attorney, and is entitled to heightened protection. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Fact (or "ordinary") work product, on the other hand, describes materials prepared in anticipation of litigation but which do not contain an attorney's mental impressions, and are consequently entitled to a lesser level of protection. *See In re Cedant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).

Inadvertent disclosure of a document may waive the attorney work product privilege. *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998). Because every inadvertent disclosure is unintentional, "[e]stablishing that a disclosure was unintentional, therefore, does not go far in establishing the absence of waiver." *Ciba-Geigy Corp. v. Sandoz Ltd.*, 916 F. Supp. 404, 412 (D. N.J. 1995). In determining whether an inadvertent disclosure has waived the attorney work product privilege of an otherwise protected document, the Court must first determine whether the document at issue is privileged. *Smith v. Allstate Insurance Co.*, 912 F. Supp. 2d 242, 247 (W.D. Pa. 2012). Next, the Court must determine whether the disclosing party has satisfied all three elements of Rule 502(b) of the Federal Rules of Evidence.[2] *Id.* Federal Rule of Evidence 502(b) provides that:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;

---

[2] This Application does not seek a "subject matter" wavier of attorney work product; it only seeks an Order permitting counsel for Mr. Gehring to retain and use the Disclosed Document in this case.

Hon. Faith S. Hochberg
February 13, 2014
Page 4

> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B).

*Id.*

> Finally, district courts in the Third Circuit also consider the following relevant factors:
>
> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its error.

*D'Onofrio v. Borough of Seaside Park*, 2012 WL 1949854, at *7 (D.N.J. 2012) (observing the similarity between these factors and Rule 502(b)). The disclosing party must prove both that the disclosure was inadvertent and that the privilege has not been waived. *See Ciba-Geigy Corp.*, 916 F. Supp. at 412.

### C. Argument

Because the government was negligent in not taking appropriate care in protecting privileged documents from disclosure and was on notice that its discovery materials could contain government work product, the government has waived attorney work product privilege for the Disclosed Document.

The government has informed that the Disclosed Document was drafted by a paralegal, but that the current version of the document has not been reviewed by any attorneys. Critically, the government does not state that the document contains legal theories or trial strategy; in fact, it classifies the document as containing "proper procedures" to deal with certain functions, including the "handing" and "scanning" of documents. Thus, while the Disclosed Document is likely attorney work product, it is "fact" work product, and, thus, entitled to a lesser form of protection that core opinion work product.

In applying Rule 502(b), although the Disclosed Document was inadvertently disclosed, the government did not take reasonable steps to prevent disclosure. The government requires defense counsel to provide 48 hours' notice before it will make available for review paper documents in its office. This protocol allows the government to determine whether the information contained in the boxes is, in fact, discoverable. Although the government had sufficient opportunity to review the material we requested, and has on a previous occasion denied us access to requested materials, it failed to ensure in this instance that privileged or otherwise non-discoverable material was not included in the relevant boxes it set out for our examination.

*See S.E.C. v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y. 1999) (holding that government waived privilege of an inadvertently produced legal memorandum when it mistakenly included the document in a production of paper documents for defense counsel to review at the SEC's offices and stating that if "the document was inserted into the file after the review was completed," then the SEC "took insufficient precautions . . . to ensure that the integrity of the boxes that had been reviewed for privileged materials was maintained").

Three other important considerations demonstrate that the government was inexcusably careless under the law. First, on January 21, 2014, we informed the government in a Court filing that a letter from the government to a government contractor was inadvertently contained in a box of discoverable materials we had reviewed. Thus, the government was on notice of its sloppy procedures, and should have taken precautions to prevent further inadvertent disclosures. Second, the fact that the Disclosed Document was commingled with a production of third-party documents suggests that the government did not take reasonable precautions to segregate its work product or otherwise maintain the integrity of the evidence. Third, if the Disclosed Document is as sensitive as the government now apparently claims, it should have designated "confidential" or "work product" on the document. *See id.* at 85 ("[I]t is difficult to understand why this document, given its sensitive nature, was not stamped 'confidential' or 'privileged.'"); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 93 CIV. 5298, 1996 WL 944011, at *5 (S.D.N.Y. Dec. 19, 1996) ("[C]ounsel failed to insure that the documents were adequately labeled so as to put opposing counsel on notice of their confidential nature in the event of inadvertent disclosure."). All of the circumstances concerning the government's disclosure of the Disclosed Document establish the unreasonableness of the government's precautions and waiver of the work product privilege with respect to the Disclosed Document.

The third element of Rule 502(b) is irrelevant in this case. The government was only able to learn and attempt to rectify its disclosure because of our prompt disclosure. Had the government produced BERGEN01 in electronic format, as it plans to do with the other discovery, it may have been weeks or months before we realized that we had received a privileged document. In addition, unlike in many cases, in which counsel does not notify its adversaries of the existence of the document until it attempts to use it as evidence, *see, e.g., Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990); *Ciba-Geigy*, 916 F. Supp. at 406-408, there was no delay in this case due to our prompt notification of the government.

Because the government cannot establish under Rule 502(b) that it took reasonable steps to prevent disclosure of the Disclosed Document, the government has waived any privilege it had over the document. In addition, the remaining relevant factors tip in the Mr. Gehring's favor.

Other factors set out in district court rulings on balance also favor a finding of wavier. With respect to the number of inadvertent disclosures, this factor may weigh in the government's favor, as there have been only two disclosures. However, this factor should be given minimal weight in this case because of the limited discovery and the opportunity to inspect the paper discovery that has occurred to date. The extent of the disclosure weighs in Mr. Gehring's favor, because the government inadvertently produced the entire document. *See Ciba-Geigy*, 916 F. Supp. at 414 (holding that privilege was waived by inadvertent disclosure and finding that this

favor weighed in favor of waiver because the disclosure of the document was "complete"). Finally, the interests of justice would be served by finding a waiver in this case. Numerous courts have held that this factor finds in favor of waiver due to a party's negligence. *See Ciba-Geigy*, 916 F. Supp. at 414 ("The Court [] finds that the interests of justice would be served by a finding of waiver, where, as here, a party's negligence has resulted in the inadvertent production of a privilege document."); *see also Cassano*, 189 F.R.D. at 86 ("[T]here are no overarching concerns of fairness dictating a contrary result. While the Commission, to be sure, is entitled to privacy for its deliberative communications with counsel, it has the same obligation to protect the confidentiality of its communications as any private party. There is no reason why its carelessness should be disregarded.") In addition, the Government in a criminal case "has a higher duty and must take even greater care to protect its privileges than a private litigant in a civil dispute." *Gangi*, 1 F. Supp. 2d at 266 (holding that Government had waived its privilege of a Prosecution Memorandum in a RICO case).

Because of the government's negligence in protecting inadvertent disclosures, despite its heightened obligation in a criminal case, it cannot establish that it meets the elements of Rule 502(b), and, in addition, the other relevant waiver factors demonstrate that the government has waived privilege over the Disclosed Document.

Numerous courts have held that inadvertent disclosure of a privileged document results in waiver of the privilege. *See, e.g., In re Grand* Jury, 138 F.3d at 983, *Gangi*, 1 F. Supp. 2d at 268, *Ciba-Geigy*, 916 F. Supp. at 414. Although we have not found any cases precisely on point, there are several cases in which courts have found waiver under similar circumstances, and the *Cassano* case is particularly instructive. In *Cassano*, the SEC made available to defense counsel approximately fifty cartons of documents in its New York Regional Office. Defense counsel was required to travel to the SEC's office to review the documents and notify the SEC which documents they wished copied, which would then be later sent to a copying service. Contained within a box of documents was a privileged memorandum written by the SEC. Defense counsel asked an SEC paralegal if this document could be immediately copied, and the paralegal confirmed with an SEC attorney in Boston that it could be copied. Twelve days later, the SEC realized what it had produced and filed a motion requesting that defense counsel return the document. 189 F.R.D. at 83-85. In finding a waiver, the Court held that the SEC had waived its privilege due to its "carelessness," most notably the request by defense counsel to immediately copy a specific document and the SEC attorney's failure to confirm that this document, contained within a box of produced material, was in fact not privileged. *Id.* at 86.

Also instructive is *Atronic International, GMBH v. SAI Semispecialists of America, Inc.*, 232 F.R.D. 160 (E.D.N.Y. 2005), where the defendant received two e-mails in plaintiff's production that plaintiff claimed were privileged. Applying a four-factor test, the Court held that plaintiff had waived the privilege. As an initial matter, the Court stated that "plaintiff's counsel failed to take adequate steps to preserve the confidentiality of the e-mails. For example, counsel failed to label the documents 'confidential' or 'privileged' so as to put others on notice of their privileged nature." *Id.* at 164 (citing, *inter alia, Gangi*, 1 F. Supp. 2d at 265 & n.5). The Court also stated that "there is no evidence in the record that plaintiff's counsel adequately employed a reasonable procedure for separating confidential materials from non-privileged communications."

*Id.* The Court concluded that because the privileged e-mails were highly relevant to rebut defendant's arguments, and "plaintiff's precautions in preventing the inadvertent disclosure of the two protected documents constitutes inexcusable carelessness," plaintiff had waived its privilege. *Id.* at 166.

*United States v. Rigas*, 281 F. Supp. 2d 733 (S.D.N.Y. 2003), demonstrates the level of care the government must take for a Court to find that privilege has not been waived. In *Rigas*, two Assistant United States Attorneys directed their IT staff to install a hard drive of evidence on a computer terminal. The IT staff was notified that the hard drive contained evidence and should be installed in a way to prevent additions or deletions from the drive. When a paralegal reviewed the drive to ensure that the drives could be accessed, her entire computer network (including privileged documents) was accidentally copied onto the drive. Before realizing what had happened, the government allowed defense counsel to make a copy of the hard drive so that they could review the evidence in their offices. In denying the defense's claim of waiver, the Court held that while the government's IT staff accidentally made a mistake in configuring the hard drive and the government could have avoided this disclosure by producing a "pristine" version (rather than a "working copy") of the hard drive, the government "took sufficient steps to ensure the confidentiality" of the work product. *Id.* at 738-39. The Court noted that the work product was stored on a password-protected account on a secure internal network, and that defense counsel did not have access to that network when they copied the hard drive. *Id.* at 738. As a result, the Court held that the Government took reasonable precautions against "foreseeable" risks of disclosure. *Id.* at 739 (emphasis omitted).

By comparison to the extensive precautions taken by the government in *Rigas*, it appears the government took no reasonable precautions in this case. To reiterate: (1) it had 48 hours' notice of which items or boxes we wished to review; (2) it specifically made a decision to allow us to review these items (as opposed to other items which it declined our request and stated that they contained non-discoverable material); (3) it had prior notice that communications between the government and an outside vendor were accidentally included in a government box of paper documents; and (4) it failed to label the document "work product" or "confidential." In short, the government was careless and negligent in failing to maintain the "integrity of the boxes," *Cassano*, 189 F.R.D. at 85, and has waived any privilege with respect to the Disclosed Document.

D. Conclusion

For all of the foregoing reasons, we respectfully request that the Court enter an Order permitting us to retain and use the Disclosed Document.

Respectfully submitted,

Nelson A. Boxer

cc: Charles Reilly (by e-mail)
Kristina Srica (by e-mail)
Bryan Bughman (by-e mail)

# Exhibit A

# Nelson Boxer

**From:** Robin Dull
**Sent:** Wednesday, February 12, 2014 8:04 AM
**To:** Reilly, Charles
**Cc:** Robin Dull; Nelson Boxer; Philip Pilmar; Srica, Kristina; Bughman, Bryan C.
**Subject:** Re: US v. Wolfson, No. 13-cr-748

Charles,

We sequestered all copies of document and notes of it, if any, immediately after sending my email dated February 11, 2014, 8:59 a.m.

Robin

On Feb 11, 2014, at 11:59 PM, "Reilly, Charles" <Charles.Reilly@usdoj.gov> wrote:

> Mr. Dull, please understand that the government regards your response to be a continuing violation of the government's work product and the government privilege. Given your refusal to craw back the document, we insist, until this matter can be resolved by an appropriate authority, that the document, any copy of it, and any notes made from the inspection of it be sealed. Sealing will also prevent any further possible violation of 6(e) and the government's law enforcement privilege.
>
> Please inform me promptly that the document, any copy ,and any notes have been sealed.
>
> Charles V. Reilly
> Trial Attorney
> DOJ, Antitrust Div.
>
> **From:** Robin Dull [mailto:rdull@pkbllp.com]
> **Sent:** Tuesday, February 11, 2014 6:49 PM
> **To:** Reilly, Charles
> **Cc:** Nelson Boxer; Philip Pilmar; Srica, Kristina; Bughman, Bryan C.
> **Subject:** RE: US v. Wolfson, No. 13-cr-748
>
> Charles,
>
> Thank you for your e mail response. While we appreciate your request with respect to the document – a document we brought to your attention – please understand that we are bound by our ethical obligations to Mr. Gehring to zealously advance his interest within the bounds of law and ethics.
>
> From your e mail, it does not appear that the document is mental impression attorney work product or otherwise "privileged." Given the way your Office has structured discovery in this case, and given your previous denial of our request to examine certain boxes of documents, the production of the document in a box of materials you did permit us to inspect may not be deemed "inadvertent" under the law, irrespective of your representation regarding inadvertency. Finally, even if the production of the document is considered inadvertent under the law, the government

1

may have waived any basis to seek return or destruction of the document. (Leaving aside the accuracy of your contention that the document is or contains Rule 6(e) material or is covered governmental or law enforcement privilege, public non-disclosure of the document could be addressed by an appropriate protective Order.)

We are reviewing the pertinent case law and have not concluded our analysis, and we expect to have a response to your request by Thursday.

Robin

---

**From:** Reilly, Charles [mailto:Charles.Reilly@usdoj.gov]
**Sent:** Tuesday, February 11, 2014 5:10 PM
**To:** Robin Dull
**Cc:** Nelson Boxer; Philip Pilmar; Srica, Kristina; Bughman, Bryan C.
**Subject:** RE: US v. Wolfson, No. 13-cr-748

Mr. Dull, the document's author is Kevin James, a paralegal with this office. He is also an attorney. Prior to your email this morning (2/11/14) the document had been shared with Caitlin Morrison, Paralegal Supervisor. Kristina Srica, an attorney in this office, reviewed in May 2013 an earlier version of the document. The document contains Mr. James' notes of directions he has received from attorneys in this office and from others on the proper procedures to deal with functions with which he is charged to perform. These functions include the handling of documents obtained in response to Grand Jury subpoenas, from the FBI, and other sources. The functions also include scanning those materials in LAW, a computer document management program used to prepare documents for attorney review in anticipated of possible litigation.

Clearly the document reflects attorney work product, government privilege material, and law enforcement sensitive materials.

Also understand that the document contains Fed. R. Crim. P. 6(e) material concerning other matters being investigated by this office.

Once again, I request that you undertake claw back procedures to ensure the confidentiality of the material contained in the document, which was inadvertently disclosed to you.

Charles V. Reilly
Trial Attorney
DOJ, Antitrust Div.

---

**From:** Robin Dull [mailto:rdull@pkbllp.com]
**Sent:** Tuesday, February 11, 2014 12:29 PM
**To:** Reilly, Charles
**Cc:** Nelson Boxer; Philip Pilmar; Srica, Kristina; Bughman, Bryan C.
**Subject:** RE: US v. Wolfson, No. 13-cr-748

Charlie,

Please provide the name of the author of the document. Please also provide the names and titles of any persons with whom the document was shared before the government received my previous email from this morning.

2

Robin

---

**From:** Reilly, Charles [mailto:Charles.Reilly@usdoj.gov]
**Sent:** Tuesday, February 11, 2014 10:49 AM
**To:** Robin Dull
**Cc:** Nelson Boxer; Philip Pilmar; Van Lonkhuyzen, John; Srica, Kristina; Bughman, Bryan C.
**Subject:** RE: US v. Wolfson, No. 13-cr-748

Mr. Dull, thank you for bringing the document you found in Bergen 01 to our attention. Please consider it attorney work product that was inadvertently provided to you. It is obviously an internal working document. We request that you undertake a clawback of this document. Please return to us the document and any copy made of it, and please destroy any notes you may have taken. Also, you are not to refer to any information derived from the document.

Charles V. Reilly
Trial Attorney
DOJ, Antitrust Div.

---

**From:** Robin Dull [mailto:rdull@pkbllp.com]
**Sent:** Tuesday, February 11, 2014 8:57 AM
**To:** Reilly, Charles
**Cc:** Nelson Boxer; Philip Pilmar; Van Lonkhuyzen, John; Srica, Kristina; Bughman, Bryan C.
**Subject:** US v. Wolfson, No. 13-cr-748

Charlie,

As you know, we reviewed documents yesterday in the above-captioned case in your office. As the government has made clear in previous Court submissions and email exchanges in this case, defense counsel may review paper "discoverable" documents only at the government's office, and only upon specific request; the government then considers counsel's request and makes available for inspection and copying such materials as the government deems appropriate, for example, declining our specific request to inspect boxes FBI 01-87.

We asked to inspect certain materials in our email dated Friday, February 7, 2014. Those materials were made available to us this morning for inspection and copying in a conference room in the government's office. Among the materials that were made available to us, and which we reviewed, was box Bergen 01. Among other things, Bergen 01 contained an eleven-page document which appears to describe, among other things, administrative procedures for handling certain types of documents. The document contains no cover page, does not describe the author, the audience, or the date on which it was written. It contains no indication that it is attorney work product or otherwise contains privileged information. Given the prior protocol of attorney request for inspection and government approval or denial, and given the government's production of this document for inspection, we have no reason to believe that the document was "inadvertently sent." Nevertheless, in an exercise of abundant caution, we are providing you with prompt notice that this document was among those that we inspected and copied yesterday.

Robin

**Robin L. Dull**
Petrillo Klein & Boxer LLP
655 Third Avenue

3

22nd Floor
New York, NY 10017
212-370-0330 (main)
646-560-5985 (direct)
rdull@pkbllp.com

*This email is intended only for the person or entity to whom it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this email or the information in this email by anyone other than the intended recipient, or an employee or agent of the intended recipient responsible for delivering the message to the intended recipient, is prohibited. If you have received this email in error, please notify the sender immediately and destroy the original message and all copies. Thank you.*