

**U.S. Department of Justice**

Antitrust Division

*New York Office*

26 Federal Plaza                           212/335-8000
Room 3630
New York, New York 10278-0004         FAX 212/335-8023

May 9, 2014

BY ECF, EMAIL, & FEDERAL EXPRESS

Honorable Faith S. Hochberg
United States District Court
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Room 4015
Newark, NJ 07101

      Re:    United States v. Wolfson, et al., 2:13-cr-00748-FSH (D.N.J.)

Dear Judge Hochberg:

      The Government respectfully writes to further address the existence of potential conflicts of interest arising from the representation of defendant Gregg Gehring by Nelson Boxer, Esq. The law firm of Petrillo Klein & Boxer ("PKB") currently represents two individuals in this matter: defendant Gehring and James Hansen, a witness who has agreed to cooperate with the Government pursuant to a non-prosecution agreement. Hansen is represented by Guy Petrillo, Esq., another partner at PKB. The Government may call Hansen as a witness during the trial in this case to provide evidence of the conspiracy, of which defendant Gehring is alleged to be a member. In a submission dated April 25, 2014, defendant Gehring declared that he had been advised of, and waived, any conflicts that may arise in connection with the involvement of Mr. Boxer, Mr. Petrillo, and PKB in this matter. The current record does not indicate whether Hansen has also waived his right to conflict-free counsel.

      The Government has identified the following three areas where potential conflicts may exist:

1)  The prospective testimony of Hansen about the existence of the conspiracy, which may be adverse to defendant Gehring because the acts and statements of one co-conspirator are admissible against all members of the conspiracy pursuant to Fed. R. Evid. 801(d)(2)(E);

*United States v. Joseph Wolfson, et al.* (2:13-cr-00748-FSH) (D.N.J.)
Gehring Conflict Letter
May 9, 2014

2)  The potential testimony of Hansen about his conduct at specific auctions, which Gehring and Hansen attended while representing different companies, where collusion may have occurred; and

3)  The possible preparation and testimony of Hansen as an exculpatory defense witness for defendant Gehring,[1] which is likely adverse to both Hansen and defendant Gehring because of potential divided loyalties and the inherent appearance of impropriety.

Accordingly, the Government respectfully requests that the Court conduct a hearing to ascertain whether defendant Gehring's waiver was "made voluntarily, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and the likely consequences." *In re of the Grand Jury Empaneled April 24, 2008*, 601 F. Supp. 2d 600, 604 (D.N.J. 2008).

## I.  BACKGROUND

The Indictment alleges that from at least as early as April 2004 until as late as February 2009, defendant Gehring served as a Vice President and active tax liens bidder for Company 1. The Government's investigation has uncovered that Gehring bid at over 130 tax liens auctions on behalf of Company 1.  Cooperating witness Hansen was a bidder for multiple companies throughout the charged conspiracy, including Company 1 for an overlapping period with defendant Gehring.  Hansen has admitted to his participation in the charged conspiracy to rig bids at tax lien auctions in New Jersey, including while employed by Company 1, but has denied informing anyone at Company 1 that he was rigging bids.  However, on several occasions, both Gehring and Hansen attended and bid at the same auctions (on behalf of different companies) that the Government alleges were rigged in furtherance of the conspiracy.

## II.  APPLICABLE  LAW

The Sixth Amendment guarantees criminal defendants effective assistance of counsel and a correlative right to conflict-free representation.  *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Criminal defendants do not have an absolute right to counsel of choice.  *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also United States v. Moscony*, 927 F.2d 742, 750 (1991).  "Even where an actual conflict exists . . . a defendant may waive this conflict . . . and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary." *United States v. Fawkes*, 510 Fed. Appx. 183, 187 (3d. Cir. 2013).  However, courts may refuse the waiver and disqualify an attorney or law firm[2] upon a showing of an actual conflict or a *serious potential* for conflict.  *Wheat*, 486 U.S. at 163.  Courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  *Id*. at 160.

---

[1] Mr. Boxer stated in his letter dated April 25, 2014 that Hansen "could only provide evidence that exculpates Mr. Gehring." *See* ECF Document 46 at pg. 5.

[2] "For purposes of conflicts of interest and the constitutional and ethical concerns they entail, a law firm is regarded as one lawyer."  *United States v. Stansfield*, 874 F. Supp. 640, 645 (M.D. Pa. 1994).

*United States v. Joseph Wolfson, et al.* (2:13-cr-00748-FSH) (D.N.J.)
Gehring Conflict Letter
May 9, 2014

"[T]he inquiry into disqualification involves a three-step process: (1) determine whether an actual conflict or potential conflict exists; (2) assess whether the [client] can waive the conflict and if so, whether the [client] has properly waived the conflict; and (3) apply the disqualification remedy to a conflict that cannot be waived or has not been properly waived." *In re of Grand Jury*, 601 F. Supp. 2d at 605. An actual conflict of interest exists when a defendant's chosen counsel has an impaired ability to comply with the ABA Code of Professional Responsibility. *Wheat*, 486 U.S. at 162. A potential conflict exists "if the interests of the defendant could place the attorney under inconsistent duties in the future." *United States v. Daugerdas*, 735 F. Supp. 2d 113, 115 (S.D.N.Y. 2010). Courts are provided "substantial latitude in refusing waivers of conflicts of interest . . . where a potential for conflict exists which may or *may not* burgeon into an actual conflict as the trial progresses." *Id*. at 163 (emphasis added). "Thus, a court is free to conduct its own *sua sponte* inquiry into a potential conflict situation." *In re of Grand Jury*, 601 F. Supp. 2d at 605.

Moreover, the Government was unable to locate any cases in the District of New Jersey which approved the use of ethics screens or walls to avoid conflicts stemming from one law firm's simultaneous representation of two clients with divergent interests in the same case. *In re Cendant Corp. Securities Litgation*, 124 F. Supp. 2d 235, 248 (D.N.J. 2000) (stating that the court was unable to locate any cases involving the use of ethics walls to insulate "attorneys at the same firm who *simultaneously* represented two different clients with conflicting interests in the *same* litigation") (emphasis in original text). Simultaneous representation of a defendant and a cooperating witness with adverse interests in one criminal case "undermines the integrity of the proceedings." *United States v. Daugerdas*, 735 F. Supp. 2d 113, 116, 118 (S.D.N.Y. 2010) (holding that one law firm could not simultaneously represent a defendant and a cooperating witness with adverse interests in same criminal proceeding because it "creates a clear conflict of interest").

### III.   ANALYSIS

Here, even in the "murkier pre-trial context," several potential conflicts are apparent from PKB's simultaneous and continuing representation of both defendant Gehring and Hansen. *Wheat*, 486 U.S. at 162. Hansen has acknowledged participating in the charged conspiracy, of which Gehring is also alleged to be a member, to rig bids at municipal tax lien auctions throughout the state of New Jersey. Gehring and Hansen likely have adverse interests in this matter simply by virtue of Hansen's status as a cooperating witness and Gehring's status as a defendant. The interests of Gehring and Hansen may diverge due to PKB's divided loyalties and ethical obligations if Hansen were to testify during the trial in this matter.

#### A.  Gehring and Hansen Participated in the Same Conspiracy

Gehring is charged with participating in a bid-rigging conspiracy from at least as early as 1998 until at least as late as February 2009 ("the charged conspiracy"). The Government has identified both Hansen and his (and Gehring's) former employer, Company 1, as co-conspirators in the charged conspiracy. According to information provided to defendants in discovery and in the Voluntary Bill of Particulars, Hansen and Gehring both attended several of the same auctions

*United States v. Joseph Wolfson, et al.* (2:13-cr-00748-FSH) (D.N.J.)
Gehring Conflict Letter
May 9, 2014

that have been identified as subject to the charged conspiracy.  It is conceivable that Hansen possesses discoverable information concerning Gehring's involvement in the charged conspiracy.  Thus, Hansen may be called by the Government to testify about the existence of the charged conspiracy, and the Government would seek to admit his testimony against Gehring (whose knowledge and involvement in the charged conspiracy will be proven through other evidence) as co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E).

### B.  Hansen as a Potential Defense Witness

According to Mr. Boxer's April 25th letter, he believes Hansen could only "provide evidence that exculpates Mr. Gehring."  *See* ECF Document 46 at pg. 5.  Hansen has acknowledged his participation in the conspiracy and is obligated to cooperate with the Government.  If Hansen is called as a witness by defendant Gehring, this delicate situation may cause Mr. Boxer and Mr. Petrillo's interests to diverge.  Significant questions may be raised about the ability of both Mr. Boxer and Mr. Petrillo to advise their respective clients with that client's best interest in mind.  Though improper behavior on the part of Mr. Boxer and Mr. Petrillo is not suggested, such a situation may not "appear fair to all who observe" it.  *Wheat*, 486 U.S. at 160.  Further, despite the existence of the firm's ethical "wall," if Hansen were called as a defense witness, both Mr. Boxer and Mr. Petrillo would likely be required to participate in witness preparation which would result in each of them interacting with the other's client.

### III.  CONCLUSION

In light of these circumstances, the Government respectfully requests that the Court conduct a hearing to ascertain whether defendant Gehring has knowingly, intelligently, and voluntarily waived any conflicts in this matter.  After advising the defendant of the risks inherent in Mr. Boxer's representation of him, the Government requests that the Court inform Gehring that he has the opportunity to consult with independent defense counsel.  If Gehring subsequently informs the Court that he wishes to proceed with Mr. Boxer as his counsel, the Government requests that the Court elicit a narrative response from Gehring designed to ascertain whether he is fully aware of the risks involved in the representation by Mr. Boxer, who's firm likely has divided loyalties, and determine whether Gehring is making a knowing, intelligent, and voluntary waiver of his right to conflict-free representation.

The same inquiry should be conducted with regard to Hansen if the Court deems it necessary.

*United States v. Joseph Wolfson, et al.* (2:13-cr-00748-FSH) (D.N.J.)
Gehring Conflict Letter
May 9, 2014

   For the convenience of the Court, the Government is prepared to provide a set of proposed questions to be asked of Gehring (and Hansen, if necessary) as part of the inquiry.

             Respectfully submitted,

              /s/

             KRISTINA N. SRICA
             CHARLES V. REILLY
             STEVEN TUGANDER
             BRYAN C. BUGHMAN
             Attorneys
             Department of Justice
             Antitrust Division

cc:  Counsel of Record (By ECF & Email)