

**U.S. Department of Justice**

Antitrust Division

---

*New York Office*

26 Federal Plaza  
Room 3630  
New York, New York 10278-0004

*212/335-8000*

*FAX 212/335-8023*

October 29, 2014

BY FEDERAL EXPRESS & ECF FILING

Honorable Michael A. Hammer  
Martin Luther King, Jr. Federal Building  
& United States Courthouse  
50 Market Street  
Newark, NJ 07102

   Re: United States v. Wolfson, et al., 2:13-cr-748-FSH

Dear Magistrate Judge Hammer,

  The Government submits this letter brief in opposition to the motion made by Defendants Joseph Wolfson, Betty Simon, Trustee, and Richard Simon, Trustee, ("the Wolfson Defendants") which seeks an order instructing the Government to send corrective letters to each and every witness and/or lawyer to whom the Government sent letters on June 20, 2014. Specifically, Defendants request that the Court order the Government to write letters stating that (1) the Government's June 20 letters did not intend to imply that defense counsel might question witnesses against their will, (2) Judge Hochberg gave permission to defense counsel to approach particular witnesses directly, rather than through counsel and (3) the Government "sincerely" apologizes for prejudice the letters may have caused to defense counsel.

  The Wolfson Defendants' motion is without merit. There is nothing improper or prejudicial about the letters sent by the Government. The letters simply notified individuals or their counsel that the individuals might be contacted by defense counsel in connection with the trial of this case, and informed the individuals that they were free to speak to the defense if they wished to do so. Moreover, the language contained in the letters is consistent with judicial authority in this District. Therefore, the Wolfson Defendants' motion should be denied in its entirety.

  I. BACKGROUND

  The Government conducted numerous interviews during its multi-year investigation of the New Jersey Tax liens industry, all of which were memorialized in FBI interview reports. The Government made substantially all of these interview reports available to each of the indicted defendants early in the discovery process, despite not having a Protective Order in place

1

governing the further dissemination of these documents. As such, the interview reports were produced to the defendants with personally identifiable information ("PII") redacted. The redacted PII included, among other things, the home addresses and telephone numbers of individuals interviewed by the Government.

At a hearing before Judge Hochberg on June 17, 2014, counsel for the Wolfson Defendants requested that the Government remove the redactions from the interview reports so that counsel might contact individuals directly. This request was granted, and the Government promptly provided all of the indicted defendants with un-redacted interview reports that allowed them to contact individuals directly. During the June 17 hearing, Judge Hochberg also stated that the Government could inform the individuals whose PII was to be disclosed that they might be contacted by the defense. *See* Transcript (ECF Document 65-5) at page 9, lines 10-12. The Government did so by sending letters on June 20, 2014. The June 20 letters are the subject of the instant motion.

The Government sent two sets of letters on June 20. The first set was sent to individuals who had never obtained counsel during the Government's investigation, and the second set was sent to counsel in instances where an individual submitted to an interview with counsel present. Of the 86 letters the Government sent, 49 were sent to attorneys, 27 of whom represent individuals who have entered into cooperation agreements with the Government in connection with its investigation of bid rigging in the New Jersey tax liens industry. These cooperation agreements require the individuals to testify at the trial of this case should the Government so request. The Government also sent 37 letters to individuals who were interviewed but who never obtained counsel during the investigation. With only a few exceptions, all of the individuals the Government interviewed have had some degree of criminal exposure in the conduct forming the basis of the conspiracy charged in the indictment at issue here.

## II. THE LETTERS TO INDIVIDUALS AND THEIR COUNSEL

Both sets of letters sent by the Government contain language stating that PII would be disclosed to the defense and that the individuals might be contacted by counsel for the defendants. In addition, both sets of letters state unambiguously that the individuals are free to speak to the defense if they choose to do so.

With respect to the set of letters sent to the individuals directly, the Wolfson Defendants object to one sentence that informs the individuals that they may wish to seek the advice of counsel in the event that anyone seeks to question them against their will. There is nothing improper or prejudicial about such language. In fact, the language the Government used in these letters closely tracks a similar letter viewed with approval by the Court in *United States v. Hatrack*, 408 F. Supp. 476, 482 (D.N.J. 1976) (letter stating that "[i]t is suggested that you seek advice of counsel in the event that you are sought to be questioned against your will"). The Wolfson Defendants cite *Hatrack* for the proposition that "it is entirely up to the witness whether he or she wishes to speak with either side." (Def. Ltr. October 22, 2014 at 7.) Yet nowhere in its motion do Defendants acknowledge that the Court in *Hatrack* considered the precise language Defendants purport to find so misleading, and opined that "this statement is no prohibition against speech. It is no more than a fair statement that the witness is free to do whatever the

2

witness wants to do." *Hatrack*, 408 F. Supp. at 482. Like the language contained in the *Hatrack* letter, the letters sent directly to individuals by the Government in the instant matter are entirely proper and simply and fairly state that the individuals receiving the letters are free to speak to the defense if they so choose. The Government's letters informed the individuals that they could speak to the defense if they so desired, and in no way suggested otherwise. Nothing in the letters prevented representatives for the defendants from speaking to individuals or to their counsel.

The Wolfson Defendants' objection to the set of letters that the Government sent to lawyers is equally without merit. As described above, this set of letters was sent to attorneys who represent individuals that either have cooperation agreements with the Government or who represented individuals during interviews conducted as part of the Government's investigation. As also described above, almost all of the individuals interviewed by the Government had potential criminal exposure at the time they were interviewed. The Government addressed these letters to counsel because these individuals were known by the Government to be represented by counsel, and the letters accordingly requested that counsel immediately advise the Government if this were no longer the case. The Government proceeded in this manner in order to err on the side of caution, and out of a concern that individuals may wish to seek legal advice before making statements about a criminal matter in which they may have exposure.

The Wolfson Defendants object to language that asks the lawyers receiving the letters to notify the Government if they no longer represent the individuals referenced in the letters. The only "harm" the Wolfson Defendants identify that could have resulted from this language appears to be a concern about these individuals "lawyering back up." (Def. Ltr. at 6.) But seeking the right of legal counsel is an individual witness's right. It is unclear how the exercise of this right could constitute harm to the Defendants. It is also unclear why counsel for the Wolfson Defendants are eager to speak to individuals before they have had an opportunity to consult with their own counsel should the individuals so desire.

Moreover, the Wolfson Defendants' conclusory statement about the "stonewalling" of its investigator is belied by its own report on the progress of that investigator. Thus, Defendants state that their investigator contacted 23 individuals and obtained statements from four of them. (*Id.*) Describing an individual who declined to speak to anyone in this investigation as "stonewalling" ignores the core principle at issue here, namely an individual's ability to exercise his or her right to choose whether to speak to defense counsel. The Defendants offer no support for their conclusion that the individuals refused to speak to their investigator because of the Government's letters, but simply assumes this to be the case. The Wolfson Defendants fail to explain how, in the face of letters they claim inhibit their ability to speak to individuals, four individuals have in fact chosen to speak to their investigator.

Furthermore, the Wolfson Defendants misrepresent facts by stating that the Government's letters were sent to "lawyers who had not spoken to their client in 4-5 years" and by suggesting that the Government now claims that "when a lawyer represents a witness at a one day proffer session during an [sic] government investigation" that witness remains represented. (Def. Ltr. at 5, 7). The Government makes no such claim. Nowhere in its motion do the Defendants acknowledge that the 27 attorneys representing individuals with cooperation agreements do in fact continue to represent those individuals. There is also simply no support

3

for Defendants' characterization that the recipients of the Government's letters "had not spoken to their client in 4-5 years." (Def. Ltr. at 7). Putting aside the factual inaccuracy of Defendants' statement about the temporal extent of communications between attorney and client, Defendants have advanced no argument as to why the Government's effort to ascertain whether an attorney continues to represent an individual in this matter is prejudicial or harmful to Defendants. It is not at all clear how a letter to counsel can impair the Defendants' ability to speak to an individual with counsel. Either the individual who is the subject of the letters in question continues to be represented, in which case counsel for the Defendants are required to seek an interview through that individual's counsel, or the individual is no longer represented, in which case the Defendants have the information necessary to contact that individual directly. Indeed, Defendants acknowledge in their motion that at least one attorney advised them of an ongoing representation. (*Id.*) Such a representation by an individual's counsel is not a bar to the Defendants' ability to seek access to that individual, provided they do so through counsel.

### III. CONCLUSION

The Government's letters of June 20, 2014 tracked the Court's language in *Hatrack*. The letters did nothing more than notify individuals that their PII would be disclosed, that they are free to speak to representatives of the defendants, and, in the case of the 49 individuals known to the Government to be represented, sought to ascertain whether such representation continued. The Wolfson Defendants point to the mere fact that some individuals have exercised their rights by obtaining counsel of their choosing, or by declining to speak to them as evidence that the Government somehow misled these individuals. By doing so, the Wolfson Defendants selectively read the facts of the investigation leading to the charges in the instant matter, and provide a nefarious gloss on the otherwise clear and proper language that is contained in the letters and has already been approved by the Court in *Hatrack*. For all of these reasons, the Wolfson Defendants' motion is without merit and should be denied in its entirety.

Respectfully submitted,

BRYAN C. BUGHMAN
Trial Attorney
Antitrust Division

Copy to all counsel (by email and ECF filing)

4